# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

MARGARITO MURGUIA-OLIVEROS,
a/k/a Margarito Oliveros Murguia,
            *Defendant-Appellant.*

No. 04-50612

D.C. No.
CR-96-00735-R

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
April 8, 2005—Pasadena, California

Filed August 29, 2005

Before: Mary M. Schroeder, Chief Judge, Harry Pregerson
and Stephen S. Trott, Circuit Judges.

Opinion by Chief Judge Schroeder

11695

## COUNSEL

Elizabeth A. Newman, Deputy Federal Public Defender, Los Angeles, California, for the appellant.

Michael J. Raphael, Assistant U.S. Attorney, Los Angeles, California, for the appellee.

## OPINION

SCHROEDER, Chief Judge:

Margarito Murguia-Oliveros appeals the district court judgment revoking his supervised release and sentencing him to

eight months in prison. Murguia-Oliveros claims that the district court lacked jurisdiction to revoke his supervised release because the supervised release term expired before his arrest and revocation hearing. He was arrested pursuant to a warrant based on facts that were not sworn. We have held that under these circumstances, a revocation of supervised release must occur during the term of supervised release. *See United States v. Vargas-Amaya*, 389 F.3d 901, 907 (9th Cir. 2004). We hold that the district court had jurisdiction, because during the term of Murguia-Oliveros's supervised release he absconded and became a fugitive for a period that tolled the term of supervised release, so that it was still running at the time of the arrest and revocation hearing.

## BACKGROUND

The facts are important. Murguia-Oliveros was originally convicted of illegal reentry after deportation in 1996. He was sentenced to a term of imprisonment followed by deportation and three years of supervised release. On September 14, 2001, after serving the term of imprisonment, he was released from custody and deported from the United States. His three-year term of supervised release thus began on that date and was set to expire on September 14, 2004. Under the terms of his supervised release, he was prohibited from reentering the United States illegally after he was deported, and he was required to report to the United States Probation Office within 72 hours of any reentry.

Murguia-Oliveros did reenter the United States during his term of supervised release, for he was arrested on unrelated charges in San Diego in October of 2003. When his probation officer subsequently learned of that arrest, he sent Murguia-Oliveros a letter via certified mail to his last known address, instructing him to report. Murguia-Oliveros failed to report and did not make any contact with the probation officer. The district court issued a bench warrant in January of 2004 for Murguia-Oliveros's arrest for violation of his supervised

release. The warrant was not based on any affidavit or sworn facts.

Under the terms of the applicable statute, a released defendant can be arrested without a warrant during the period of supervised release for violating the terms of that supervised release. 18 U.S.C. § 3606. The statute provides that:

> If there is probable cause to believe that a . . . person on supervised release has violated a condition of his . . . release, he may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him. A probation officer may make such an arrest whenever the . . . releasee is found, and may make the arrest without a warrant.

*Id.* During the period of supervised release, the district court has jurisdiction to revoke the period of supervised release if the district court finds by a preponderance of the evidence that the defendant violated the terms of that supervised release. 18 U.S.C. § 3583(e)(3).

After the period of supervised release has expired, however, the district court can revoke the term of supervised release only if a warrant based on sworn facts was issued within the supervised release period. 18 U.S.C. § 3583(i); *Vargas-Amaya*, 389 F.3d at 907. There was no such warrant in this case. The existence of probable cause is not disputed.

Murguia-Oliveros was actually arrested in November of 2004, nearly two months after the term of supervised release was originally set to expire. The district court revoked Murguia-Oliveros's term of supervised release and sentenced him to a term of imprisonment in December of 2004.

The issue in this case therefore is whether Murguia-Oliveros's term of supervised release was still running at the

time of his arrest and revocation hearing. The district court held that it was. The district court concluded that Murguia-Oliveros was in violation of the conditions of supervised release for a period of time that tolled the running of the term of supervised release, because his status was equivalent to that of a fugitive. Murguia-Oliveros appeals.

## DISCUSSION

[1] The statutory provisions regarding supervised release do not expressly provide for tolling during fugitive status. *See* 18 U.S.C. § 3624. In *United States v. Crane*, 979 F.2d 687, 691 (9th Cir. 1992), however, we held that specific statutory language is not required to toll the term of supervised release while a defendant is in "fugitive status." We held that the defendant's term of supervised release was tolled while he was a fugitive, because "[t]o hold otherwise here would reward those who flee from bench warrants and maintain their fugitive status until the expiration of their original term of supervised release." *Id.*

We publish this opinion to clarify what constitutes "fugitive status" for purposes of tolling a term of supervised release. Murguia-Oliveros argues that he could not become a fugitive merely by failing to comply with the terms of his supervised release. We disagree.

The leading case is *Crane*, where the defendant had been sentenced to one year in custody, followed by one year of supervised release at a community treatment center. 979 F.2d at 688. After serving four and a half months of his supervised release at the treatment center, the defendant left, or "absconded." *Id.* The district court issued a bench warrant for his arrest. *Id.* By the time the defendant was taken into federal custody for violating his supervised release, his original period of supervised release had expired. *Id.* The defendant therefore argued that the district court no longer had jurisdiction over him. We held that the defendant's term of super-

vised release was tolled while he was in "fugitive status." *Id.* at 691. He had stopped serving the terms of supervised release by leaving the place where he was supposed to serve it.

**[2]** Murguia-Oliveros engaged in similar conduct. He departed the place he was authorized by the terms of his release to be. The terms of his release authorized him to be outside the United States, but he entered the United States, where he was not authorized to be, and failed to contact his probation officer as required. In so doing, Murguia-Oliveros clearly violated the terms of his supervised release. Murguia-Oliveros was then ordered by his probation officer to report, but did not do so. We therefore hold that Murguia-Oliveros became a fugitive because he effectively absconded from serving the terms of his supervised release.

In arguing he was not a fugitive from his supervised release, Murguia-Oliveros relies on authority dealing with the fugitive disentitlement doctrine that applies to criminal appeals. That principle of fugitive disentitlement authorizes the dismissal of a criminal defendant's appeal from a conviction when the defendant becomes a fugitive during the appellate process. We have held in that context that the defendant does not become a fugitive, and the dismissal sanction therefore does not apply, when the convicted defendant fails to comply with the conditions of probation in failing to report to the probation office. *United States v. Gonzalez*, 300 F.3d 1048, 1051 (9th Cir. 2002). For the fugitive disentitlement doctrine to apply in a criminal appeal, we require a further showing that the defendant has fled or has hidden from the jurisdiction of the court. *Id.* The reason is that escape from custody is inconsistent with the pursuit of judicial remedies and constitutes a voluntary waiver of any pending judicial review of a criminal conviction. *See Antonio-Martinez v. INS*, 317 F.3d 1089, 1091 (9th Cir. 2003). Dismissal of a defendant's appeal from a conviction is a severe sanction that courts should not lightly impose. *Id.*

Murguia-Oliveros thus argues that failure to comply with the terms of his release should not result in the tolling, or extension, of his release period because tolling is a similarly severe sanction. It is not.

**[3]** We deal here with a far less severe sanction, and one that is necessary to the purpose of supervised release. This is because, as we recognized in *Crane*, we should not reward those who violate the terms of their supervised release and avoid arrest until after the original term expires. 979 F.2d at 691. Tolling is necessary to prevent this result.

**[4]** For similar reasons, Murguia-Oliveros's reliance on criminal statute of limitations cases is misplaced. Under 18 U.S.C. § 3290, "[n]o statute of limitation shall extend to any person fleeing from justice." We have held that, for this statute to apply, the government must bear the burden of showing that a defendant concealed himself or herself with an intent to avoid prosecution. *See United States v. Gonsalves*, 675 F.2d 1050, 1054 (9th Cir. 1982); *Caplan v. Vokes*, 649 F.3d 1336, 1341-42 (9th Cir. 1981); *United States v. Wazney*, 529 F.2d 1287, 1289 (9th Cir. 1967). The purpose of this statute is to prevent a defendant from getting the benefit of the statute of limitations when the defendant's very purpose is either to evade prosecution or to prevent the government from gathering information needed to prove charges. *Gonsalves*, 675 F.2d at 1052-53. In contrast, the purpose of supervised release is to establish a period of readjustment. It is "to protect the public and to facilitate the reintegration of the defendant into the community." *United States v. Vallejo*, 69 F.3d 992, 994 (9th Cir. 1996). A person on supervised release should not receive credit against his period of supervised release for time that, by virtue of his own wrongful act, he was not in fact observing the terms of his supervised release. *See United States v. Rodriguez*, 682 F.2d 827, 829 (9th Cir. 1982).

**[5]** Here, Murguia-Oliveros was a fugitive for purposes of supervised release at least from the time the government

obtained a warrant for his arrest, in January of 2004, until the time the supervised release would have expired, absent a violation, in September of 2004. This was a period of eight months. Murguia-Oliveros was arrested in November of 2004, which was well within the tolling period, and his supervised release was revoked shortly thereafter. By virtue of tolling, the term of supervised release had not expired at the time of his arrest or at the time of the revocation. The district court therefore had jurisdiction to revoke Murguia-Oliveros's term of supervised release, and on the basis of an unsworn warrant. *See* 18 U.S.C. § 3583(e)(3); *Vargas-Amaya*, 389 F.3d at 907.

**AFFIRMED.**