SCIRICA, Circuit Judge
 

 In this appeal, we determine whether a defendant can count toward the service of
 his supervised release term a period of time he is fugitive, that is, absent from the court's supervision. The statutory provisions governing supervised release do not contain plain language-or indeed any language-that expressly resolves that question. But, as the majority of Courts of Appeals to address the question have concluded, a defendant does not in fact serve his supervised release term while he deliberately absconds from the court's supervision. Accordingly, a defendant's supervised release term tolls while he is of fugitive status.
 

 Defendant Donte Island appealed to challenge the District Court's order revoking his supervised release and sentencing him to a term of imprisonment. Island primarily contended that under
 
 18 U.S.C. § 3583
 
 (i) the Court's jurisdiction terminated at the end of his three-year supervised release term. Island asserted the Court accordingly lacked authority to revoke his release based on his involvement in a police officer shooting first raised to the court a few days after those three years had passed. The government maintained the Court had jurisdiction to revoke Island's supervised release for the officer shooting violation based on an earlier-issued warrant for unrelated violations. We have no occasion to resolve that jurisdictional dispute, however, because we join the majority of Circuits that have addressed the issue to hold Island's supervised release term tolled while he was fugitive from the court's supervision. As a result of that tolling, Island's term of supervised release had not yet expired when the later warrant was issued. Because the District Court therefore had jurisdiction over the second warrant and underlying petition of violation, we will affirm.
 

 I.
 

 Following a jury trial in 2004, the District Court sentenced Island to 110 months' imprisonment and 3 years' supervised release for possession of a firearm by a convicted felon,
 
 18 U.S.C. § 922
 
 (g)(1). Island commenced that three-year supervised release term on June 26, 2013, and it was scheduled to end on June 25, 2016.
 

 Island completed the first two years of his release term without incident, but on September 18, 2015, Island's probation officer filed a petition of violation. The petition alleged Island had breached the terms of his release by committing several technical,
 
 i.e.
 
 , noncriminal or minor, violations, such as failing to notify his probation officer of a changed address and failing several drug tests. The petition noted that "[m]ore troublesome" among the violations was Island's failure to report to his probation officer. App'x 34. The officer relayed that Island "ceased reporting as instructed" on July 17, 2015, after which his "whereabouts [were] unknown." App'x 34, 28. The petition chronicled over half a dozen attempts to contact Island in the coming months, none of which were successful. Island failed to report for a scheduled meeting, then did not respond to phone calls, voicemails, letters, or emails sent to him at several possible numbers and addresses. The Court issued a warrant on the basis of that petition the day it was filed, but that warrant remained outstanding.
 

 On June 27, 2016-just over three years after Island's supervised release term had begun-the probation office filed a second petition of violation, styled as an "[a]mended" version of the first. App'x 35. The Court again issued a warrant the same day, now based on a new violation. The second petition alleged Island had committed a serious violation of the terms of his release on June 21-just under three years after Island's supervised release term had begun-by firing a weapon at
 two police officers, hitting one. Island was arrested and taken into custody by Delaware County authorities that day. The District Court held a teleconference with the government and Island's counsel soon after receiving the petition, and the parties then agreed to delay a hearing on both petitions of violation until after the disposition of Island's Delaware County charges. Island was convicted in July 2017 of attempted murder and other charges, then sentenced in the Court of Common Pleas of Delaware County, Pennsylvania to 33 to 100 years' imprisonment.
 

 The District Court held a supervised release revocation hearing on December 13, 2017. The government sought the statutory maximum revocation term of 24 months' imprisonment; at the hearing, it stressed the severity of the officer shooting underlying the second violation petition. The government further emphasized Island "wasn't within hours of completing his sentence on this.... He was 11 months a fugitive, right, so it's not like he committed the crime on the 11th hour." App'x 57-58. In response, Island emphasized he would already be serving 33 to 100 years in prison and argued "it would be excessive and unnecessary based on the practical realities of his case" to also enforce a revocation term of imprisonment. App'x 62. The court imposed the government's recommended revocation sentence of 24 months, to run consecutively after Island's state sentence, on the basis of only the second violation petition. Island now appeals.
 
 [1]
 

 II.
 

 Island asserts on appeal that the District Court lacked jurisdiction under
 
 18 U.S.C. § 3583
 
 (i) to revoke his supervised release because the warrant underlying revocation-based on the shooting-was untimely issued after the three-year calendar on his supervised release term had run. The government responds that the earlier warrant for unrelated technical violations endowed the District Court with ongoing jurisdiction, but also contends the warrant was timely because Island's three-year supervised release term was tolled while he was of fugitive status. We may "affirm on any ground supported by the record,"
 
 United States v. Mussare
 
 ,
 
 405 F.3d 161
 
 , 168 (3d Cir. 2005),
 
 [2]
 
 and we will here affirm on the basis that fugitive tolling of Island's supervised release term rendered the second warrant timely.
 

 A.
 

 We begin with an overview of the purpose of the supervised release scheme before turning to how fugitive tolling supports that scheme. Congress designed supervised release, laid out in
 
 18 U.S.C. § 3583
 
 , to be "a form of postconfinement monitoring overseen by the sentencing court."
 
 Johnson v. United States
 
 ,
 
 529 U.S. 694
 
 , 696-97,
 
 120 S.Ct. 1795
 
 ,
 
 146 L.Ed.2d 727
 
 (2000). "[T]he supervised release term constitutes part of the original sentence, and the congressional intent is for defendants to serve their full release term."
 
 United States v. Buchanan
 
 ,
 
 638 F.3d 448
 
 , 455 (4th Cir. 2011). As the Supreme Court has explained, "Congress intended supervised release to assist individuals in their
 transition to community life. Supervised release fulfills rehabilitative ends," providing "individuals with postconfinement assistance" through the supervision of the court.
 
 United States v. Johnson
 
 ,
 
 529 U.S. 53
 
 , 59,
 
 120 S.Ct. 1114
 
 ,
 
 146 L.Ed.2d 39
 
 (2000). The court can provide such assistance because, "[w]hile on supervised release, the offender [is] required to abide by certain conditions,"
 
 Johnson v. United States
 
 , 529 U.S. at 697,
 
 120 S.Ct. 1795
 
 , such as regularly reporting to a probation officer, pursuing schooling or work, and refraining from further criminal activity,
 
 see
 
 U.S.S.G. § 5D1.3(c) ;
 
 18 U.S.C. § 3583
 
 (d). Congress authorized supervising courts to revoke supervised release and order reimprisonment when defendants fail to meet their release conditions.
 
 See
 

 id.
 

 § 3583(e) ;
 
 Johnson v. United States
 
 , 529 U.S. at 697,
 
 120 S.Ct. 1795
 
 .
 

 The plain language of the supervised release statutory provisions is, contrary to the dissent's suggestion, silent on how a defendant's failure to comply with release terms effects the running of his sentence.
 
 See
 

 18 U.S.C. §§ 3583
 
 , 3624. Though those provisions do not expressly provide for tolling when a defendant absconds from supervision, fugitive tolling furthers the purposes of the supervised release scheme.
 
 See
 

 Staples v. United States
 
 ,
 
 511 U.S. 600
 
 , 605,
 
 114 S.Ct. 1793
 
 ,
 
 128 L.Ed.2d 608
 
 (1994). When a defendant under supervised release fails to meet release conditions by absconding from supervision, a court cannot effectively oversee his transition to the community. The majority of Courts of Appeals to address this question have accordingly determined a defendant's term of supervised release is tolled during the period he is of "fugitive" status,
 
 i.e.
 
 , fails to report and comply with the terms of his postrelease sentence.
 
 See
 

 United States v. Barinas
 
 ,
 
 865 F.3d 99
 
 , 106 (2d Cir. 2017) ;
 
 United States v. Buchanan
 
 ,
 
 638 F.3d 448
 
 , 453-58 (4th Cir. 2011) ;
 
 United States v. Murguia-Oliveros
 
 ,
 
 421 F.3d 951
 
 , 954 (9th Cir. 2005).
 
 But see
 

 United States v. Hernandez-Ferrer
 
 ,
 
 599 F.3d 63
 
 , 67-68 (1st Cir. 2010) (declining to adopt fugitive tolling for supervised release).
 

 The fugitive tolling doctrine reflects two key principles that align with the purposes of supervised release.
 
 First
 
 , the rehabilitative goals of supervised release are served only when defendants abide by the terms of their supervision-those goals are not served simply by the passage of time during the release term. "Mere lapse of time without imprisonment or other restraint contemplated by the law does not constitute service of sentence."
 
 Anderson v. Corall
 
 ,
 
 263 U.S. 193
 
 , 196,
 
 44 S.Ct. 43
 
 ,
 
 68 L.Ed. 247
 
 (1923). A supervising court cannot offer postconfinement assistance or ensure compliance with the terms of release while a defendant is truant.
 
 See
 

 Barinas
 
 ,
 
 865 F.3d at 107
 
 (reasoning that measuring a supervised release term "by rote reference to a calendar" is "inconsistent ... with Congress's goals in requiring supervised release");
 
 Murguia-Oliveros
 
 ,
 
 421 F.3d at 954
 
 ("A person on supervised release should not receive credit against his period of supervised release for time that ... he was not in fact observing the terms of his supervised release.").
 

 Second
 
 , the fugitive tolling doctrine reflects the settled principle that defendants are not generally credited for misdeeds, such as failing to comply with the terms of supervised release.
 
 See
 

 Buchanan
 
 ,
 
 638 F.3d at 452
 
 (recognizing the "general rule that 'when the service of a sentence is interrupted by conduct of the defendant the time spent out of custody on his sentence is not counted as time served thereon' ") (quoting
 
 United States v. Luck
 
 ,
 
 664 F.2d 311
 
 , 312 (D.C. Cir. 1981) );
 
 United States v. Crane
 
 ,
 
 979 F.2d 687
 
 , 691 (9th Cir. 1992) (explaining the
 fugitive tolling doctrine enables courts to avoid "reward[ing] those who flee from bench warrants and maintain their fugitive status until the expiration of their original term of supervised release"). As the Second Circuit noted, the fugitive tolling doctrine corresponds to a variety of procedural doctrines that prevent rewarding fugitive defendants for misconduct: fugitive defendants are barred from invoking statutes of limitations,
 
 see
 

 18 U.S.C. § 3290
 
 ; appeals can be dismissed if defendants abscond,
 
 see
 

 Ortega-Rodriguez v. United States
 
 ,
 
 507 U.S. 234
 
 , 239,
 
 113 S.Ct. 1199
 
 ,
 
 122 L.Ed.2d 581
 
 (1993) ; and defendants may not credit toward a term of imprisonment time when they have escaped from prison,
 
 Corall
 
 ,
 
 263 U.S. at 196
 
 ,
 
 44 S.Ct. 43
 
 .
 
 See
 

 Barinas
 
 ,
 
 865 F.3d at 107-08
 
 .
 

 Because the fugitive tolling doctrine helps realize the design and purpose of supervised release, we join the majority of circuits to have considered the question and recognize a supervised release term tolls while a defendant is of fugitive status. A defendant cannot count toward his sentence time spent out of the court's supervision as a consequence of his own doing. At the same time, the defendant's absence does not free him to violate the terms of his supervised release without consequence; the defendant remains responsible for his violating conduct.
 
 [3]
 
 Fugitive tolling does not lift the conditions of a defendant's supervised release, but instead recognizes the goals of supervised release are not served when defendants deliberately fail to follow its conditions.
 

 This conclusion follows readily from our existing law. We considered the application of tolling doctrines to supervised release in
 
 United States v. Cole
 
 ,
 
 567 F.3d 110
 
 (3d Cir. 2009), where we held supervised release would not toll when a defendant was deported as a condition of supervised release. We noted deportation is a statutorily-contemplated condition of supervised release under
 
 18 U.S.C. § 3583
 
 (d), and reasoned "[i]f a defendant is removed and ordered excluded from the United States as a condition of supervised release, how can it be that the period of supervised release is tolled during that period?"
 

 Id.
 

 at 115
 
 . We compared that unsuccessful deportation tolling argument to
 
 18 U.S.C. § 3624
 
 (e), which expressly provides for tolling of a supervised release period where "the person is imprisoned in connection with a conviction for a Federal, State, or local crime" for at least 30 days. That comparison demonstrated Congress had considered two circumstances in which the defendant would be outside the court's supervision-deportation and imprisonment-and determined how that difference would affect the running of the supervised release term. In the case of deportation, where the defendant's distance from supervision results from Congress's design in
 
 18 U.S.C. § 3583
 
 (d), the defendant would get credit for time served; while in the case of imprisonment, where the defendant's own actions lead to interruption
 of the release term, the release term would toll.
 

 We find unconvincing the reliance of Island and the dissent on
 
 Cole
 
 to contend imprisonment is the only context in which supervised release may be tolled. We found "persuasive Cole's argument that the canon of
 
 expressio unius est exclusio alterius
 
 suggests that where Congress has explicitly allowed for tolling only when the defendant is imprisoned on another charge, it does not intend for district courts to toll supervised release under any other circumstance."
 
 567 F.3d at 115
 
 . The First Circuit similarly depended on the
 
 expressio unius
 
 canon in rejecting the fugitive tolling doctrine.
 
 See
 

 Hernández-Ferrer
 
 ,
 
 599 F.3d at 68
 
 . But as noted, Congress explicitly laid out how imprisonment and deportation would affect the running of a supervised release term. We accordingly inferred in
 
 Cole
 
 that in addressing deportation and treating it as a condition of supervised release, Congress determined tolling should not then apply. But Congress did not address at all whether tolling principles should apply when a defendant is fugitive from the court's supervision.
 

 Indeed, Congress was silent on the question. While the dissent suggests that silence counsels in favor of proscribing fugitive tolling, we note, as some of our sister Circuits have, "[t]he normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept" such as the one that a defendant cannot profit from his misdeeds, "it makes that intent specific."
 
 Midlantic Nat. Bank v. New Jersey Dep't of Env. Protection
 
 ,
 
 474 U.S. 494
 
 , 501,
 
 106 S.Ct. 755
 
 ,
 
 88 L.Ed.2d 859
 
 (1986) ;
 
 see
 

 Barinas
 
 ,
 
 865 F.3d at 109
 
 ("[W]e typically expect a clearer expression of an intention to override such longstanding precepts as the principle that a fugitive should not profit by his unlawful or contumacious conduct.");
 
 Buchanan
 
 ,
 
 638 F.3d at 456
 
 ("We find no indication to suggest that Congress considered the issue and intended to preclude the judicially created doctrine of fugitive tolling in the supervised release context.");
 
 cf.
 

 Young v. United States
 
 ,
 
 535 U.S. 43
 
 , 52,
 
 122 S.Ct. 1036
 
 ,
 
 152 L.Ed.2d 79
 
 (2002) (drawing "no negative inference from the presence of an express tolling provision" in one section of the Bankruptcy Code "and the absence of one in" another section, where the differing treatment "would be quite reasonable"). Recognizing tolling only in the single case of imprisonment would in fact, as our sister Circuits have explained, "impede achievement of Congress's stated goals for supervised release."
 
 Barinas
 
 ,
 
 865 F.3d at 109
 
 .
 

 Our reasoning in
 
 Cole
 
 accords with the premises of fugitive tolling and reflects the distinction between defendants who deliberately defy the conditions of supervised release and those who leave the jurisdiction not on their own but at the government's order.
 
 Accord
 

 Barinas
 
 ,
 
 865 F.3d at 109-10
 
 (describing the running of a term during deportation as a "far cry from the circumstances in which [the defendant] was to remain in the United States for supervision and instead fled, in violation of the conditions imposed on him");
 
 Buchanan
 
 ,
 
 638 F.3d at 457
 
 (explaining fugitive tolling is "distinguishable" from the decision not to toll during deportation "because the fugitive-defendant's absence arises from his own misconduct. The same cannot be said about a defendant who has been removed from the country by government order").
 
 Cole
 
 confirms a defendant cannot profit from his own misdeeds; the fugitive tolling doctrine reflects that principle.
 

 Finally, the dissent contends
 
 18 U.S.C. § 3583
 
 (i) precludes fugitive tolling. Section 3583(i) reads:
 

 The power of the court to revoke a term of supervised release for violation of a condition of supervised release ... extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.
 

 We have held " § 3583(i) is in fact jurisdictional and thus not subject to equitable tolling,"
 
 United States v. Merlino
 
 ,
 
 785 F.3d 79
 
 , 86 (3d Cir. 2015), but that holding does little to help Island because fugitive tolling is not based in Section 3583(i) 's jurisdictional grant. Section 3583(i) concerns the extension of a court's jurisdiction, but it is undisputed that a court has jurisdiction during the defendant's service of his supervised release term. We here begin with the question whether Island in fact served his supervised release term. Because, as we have explained, a defendant does not serve his term while fugitive, part of a fugitive defendant's term remains to be served. During the remainder of that supervised release term, the district court correspondingly has jurisdiction. As the Second Circuit has recognized, it is not " § 3583(i) itself" which "authoriz[es] the tolling of the supervised-release period based on the defendant's fugitive status."
 
 United States v. Barinas
 
 ,
 
 865 F.3d 99
 
 , 109 (2d Cir. 2017). Instead, as discussed, "such tolling is consistent with the traditional principle that an absconder should not benefit from his fugitivity and is consistent with Congress's sentencing scheme of supervision to facilitate the defendant's transition to a law-abiding life in free society."
 

 Id.
 

 B.
 

 For at least the period between the court's issuance of the first warrant for violating supervised release in September 2015 and the shooting leading to Island's apprehension by law enforcement in June 2016, Island was of fugitive status.
 
 [4]
 
 As Island's probation officer timely notified the court and the government confirmed at the revocation hearing, Island repeatedly failed to report for scheduled meetings and drug tests. Island did not respond to the officer's many attempts at contact in different media and at different addresses.
 
 [5]
 
 Under the fugitive tolling doctrine, Island cannot count those months spent outside the court's supervision toward his supervised release term. Accordingly, when the second warrant for violation of supervised release issued on June 27, 2016, it fell well within the tolled term. We therefore need not consider whether the first warrant endowed the District Court with jurisdiction over the unrelated later violations alleged in the second warrant. Because the second warrant was issued within the supervised release term properly accounting for fugitive tolling, we will affirm the trial court's revocation of supervised release.
 

 The District Court had jurisdiction over the original charges under
 
 18 U.S.C. § 3231
 
 and over the supervised release violations under
 
 18 U.S.C. § 3583
 
 . This court has appellate jurisdiction under
 
 28 U.S.C. § 1291
 
 .
 

 The parties dispute the appropriate standard of review for the question whether the District Court had jurisdiction under
 
 18 U.S.C. § 3583
 
 (i) to revoke Island's supervised release. Because we affirm the District Court's decision on a different ground, we have no occasion to resolve that dispute.
 

 As the Fourth Circuit explained:
 

 When a defendant absconds while on supervised release, his absence precludes the sentencing court from exercising supervision over him. Tolling is necessary in that instance to ensure that, upon being apprehended, the defendant will be subject to judicial supervision for a complete term. However, that does not mean that a defendant who has absconded thereby nullifies the terms and conditions of the supervised release order during his flight. Rather, the terms and conditions remain in effect, and the fugitive-defendant is not at liberty to embark on a "holiday" from them. To the extent that this result may seem harsh, it is the defendant's own misconduct which creates it.
 

 Buchanan
 
 ,
 
 638 F.3d at
 
 458 ;
 
 see also
 

 Barinas
 
 ,
 
 865 F.3d at 109
 
 .
 

 To the extent Island suggests the fugitive tolling doctrine poses administrability problems because the precise date a defendant becomes fugitive may be difficult to ascertain, such concerns are overblown-and not at issue in this case. We note the Ninth Circuit has applied the fugitive tolling doctrine for decades without noteworthy administrability problems.
 
 See
 

 United States v. Ignacio Juarez
 
 ,
 
 601 F.3d 885
 
 , 886 (9th Cir. 2010) ;
 
 Murguia-Oliveros
 
 ,
 
 421 F.3d at 954
 
 .
 

 In fact, had Island actually been under the court's supervision, the first warrant following technical violations of his supervised release could have been executed.